IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

GREG HARGUS,                         )
                                       )
               Plaintiff,         )
                                         )
vs.                                        )
                                       )
FEROCIOUS AND IMPETUOUS, LLC     )            Civil No. 2013-111
d/b/a ONE LOVE CHARTERS, KYLE       )
COLEMAN, JOSEPH TRATTNER, the ST.   )
THOMAS SPORT AND SOCIAL CLUB,     )
LLC and the M/V ONE LOVE, a twenty-six  )
(26) foot 1998 Stamas CC, bearing U.S.     )
Virgin Islands Vessel Registration Number:  )
VI 3333-TC, with twin Yamaha 150        )
horsepower engines and her apparel,       )
appurtenances, etc., *in rem*,              )
                                        )
             Defendants.      )
_____ )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiff's "requests" – filed the night before and the morning of the first day of the two-day bench trial held on February 24-25, 2015 – seeking judicial notice of the following items, totaling over 150 pages:

(1)     May 2013 OES Estimates: Occupational Employment Statistics Survey for the U.S. Virgin Islands – U.S. Department of Labor, Bureau of Labor Statistics [DE 206, a 19-page document];

(2)     A "Present Value Formula" [DE 207];

(3)     United States Life Tables, 2009 – U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Center of Health Statistics, National Vital Statistics System [DE 208, a 45-page document];

(4)     20-year constant maturity rates on a U.S. Treasury Bond for 2012 and 2013 [DE 209, 12 pages];

(5)     U.S. Social Security Administration "full retirement age" for an individual born on August 1, 1973 [DE 210];

(6)      A quote from *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983) [DE 211];

(7)      Court records from *U.S. v. Coleman, et al.*, Case No. 3:12-cr-CVG-RM-32 (D.V.I.) and *U.S. v. Coleman*, Case No. 3:13-cr-30 (D.V.I.) [DE 215]; and

(8)      Navigation and Vessel Inspection Circular No. 7-94: Guidance on the Passenger Vessel Safety Act of 1993 – U.S. Department of Transportation, United States Coast Guard [DE 217-1, a 38-page document].

Plaintiff's requests contained no explanation and little, if any, legal authority regarding the propriety of judicially noticing these items. It was also not clear to the Court exactly what "facts" it was being asked to notice. Accordingly, at the conclusion of the bench trial, the Court directed the parties to brief their respective positions regarding the Court's authority to judicially notice the above items.

## I.      LEGAL STANDARD

Federal Rule of Evidence 201 provides guidelines for when a court may take judicial notice of adjudicative facts. "[A]djudicative facts are those to which the law is applied in the process of adjudication." FED. R. EVID. 201, Advisory Notes. "A judicially noticed fact must be one not subject to reasonable dispute . . . ." FED. R. EVID. 201(b). That is, it either: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*

A court must take judicial notice of a fact "if requested by a party and supplied with the necessary information." FED. R. EVID. 201(c)(2). However, the noticed fact must be relevant to the issues in the case.[1] *See* Wright & Miller, 21B Fed. Prac. & Proc. Evid. § 5104 (2d ed.)

---

[1]      It is for this reason that the Court finds perplexing plaintiff's unsupported statement at the conclusion of his supplemental brief [DE 229, at 14] that it "is not for the Court to make determinations at this stage as to how the party requesting judicial notice intends on using such facts or whether they would be admissible under Fed. R. Evid. 403." The Court would fail to fulfill its gate-keeping role if it allowed the introduction of "facts" into a matter, the relevance of which is neither readily apparent nor tested and evaluated.

(stating "the few federal cases considering the issue have insisted that noticed facts be relevant")

(citing *Piskanin v. Court of Common Pleas of Lehigh County*, 359 Fed. Appx. 276, 278 (3d Cir.

2009) (cannot take judicial notice of prior grants of pauper status because each grant depends on

the current financial status of the applicant)).  "The court may take judicial notice at any stage of

the proceeding," Fed. R. Evid. 201(d), "as long as it is not unfair to a party to do so and does not

undermine the [] court's factfinding authority."  *Nantucket Investors II v. California Fed. Bank*,

61 F.3d 197, 205 (3d Cir. 1995).  The effect of noticing an adjudicative fact is to accept the fact

as conclusively determined and preclude further rebutting evidence.  Fed. R. Civ. P. 201(f);

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, 2013 U.S. Dist. LEXIS 31155, at *29 (S.D.N.Y. Mar.

6, 2013).

## II.    DISCUSSION

From the documentation provided, the Court infers that plaintiff proffers the first six

items for judicial notice as a predicate to arguing for an award of future economic loss, including

lost wages and medical expenses, in the absence of expert testimony.  Plaintiff apparently seeks

admittance of the seventh item as evidence in support of his negligent entrustment claim against

Ferocious and Impetuous, LLC d/b/a One Love Charters ("One Love") and Joseph Trattner.

Finally, plaintiff seeks judicial notice of the final item for reasons that remain a mystery.

## A.  Bureau of Labor Statistics Wage Data for the U.S. Virgin Islands

Plaintiff clarifies in his supplemental brief [DE 229] that he requests that the Court

judicially notice the Bureau of Labor Statistics' ("BLS") May 2013 Virgin Islands wage data for

"Welders, Cutters, Solderers and Brazers," and in particular, the "average" salary of $34,130.

Courts regularly find data from the BLS reliable and appropriate for judicial notice, including

some wage data.  *See, e.g.*, *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648-49 (7th

Cir. 2011) (judicially noticing the BLS' consumer price index); *Rhoades v. Walsh*, 2009 U.S. Dist. LEXIS 75784, at 39 n.24 (D. Me. Aug. 19, 2009) (judicially noticing BLS' work life expectancy tables); *Woodfin Suite Hotels, LLC v. City of Emeryville*, 2007 U.S. Dist. LEXIS 4467, at *8 (N.D. Cal. Jan. 8, 2007) (judicially noticing BLS' wage data).

Here, however, plaintiff provides no explanation as to how the alleged fact he wants noticed is relevant to this case. Evidence during the bench trial included testimony regarding plaintiff's actual earnings from various activities prior to the incident (including welding), which are not comparable to the BLS average.[2] Based on plaintiff's actual earnings, the average salary for "Welders, Cutters, Solderers and Brazers," reported by BLS for May 2013, without more, lacks relevance. *See Evans v. BV Shipping Co. Lombok Strait*, 2009 U.S. Dist. LEXIS 92305, at *6 (D.N.J. Oct. 5, 2009) ("To support a future earning loss calculation, a plaintiff must present an evidentiary basis with 'proper foundation and sufficient factual predicates . . . .'") (quoting *Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987)). Moreover, elements in the table such as the Relative Standard Error for this entry might well affect its reliability, calling into question whether the requisite "high degree of indisputability"[3] is present. Under these circumstances, the Court declines to judicially notice this "fact."

**B. Present Value Formula**

It is well settled that the Court can take judicial notice of a formula for discounting future economic damages to present value. *Russell v. Wildwood*, 428 F.2d 1176, 1183 (3d Cir. 1970).[4]

---

[2]    For example, plaintiff's tax returns for the years prior to the accident indicate he was self-employed (engaging in either welding or farm business) and reported the following gross income:  (1) $26, 870 in 2008 (Ex. 48); (2) $27,003 in 2009 (Ex. 49); (3) $13, 851 in 2010 as a farmer (Ex 50), and (4) $20,440 in 2011 (Ex. 51).

[3]    FED. R. EVID. 201(a) cmt. a.

[4]    It appears, however, that plaintiff ultimately seeks judicial notice of various values to plug into the formula. While the Court can recognize this proffered formula, as discussed below, its contents are not suitable for resolution by judicial notice.

*Hargus v. FEROCIOUS AND IMPETUOUS, LLC d/b/a ONE LOVE CHARTERS, et al.*
Civil No. 2013-111
Page 5

## C. Life Expectancy Tables

Plaintiff requests the Court take judicial notice that in 2009 (several years before the events in question here), the National Center for Health Statistics ("NCHS") estimated a 35-36 year old white male would live an additional 43.2 years.  Under some circumstances, it may be appropriate to take judicial notice of life expectancy and mortality tables published by the federal government.  *See Crane v. Crest Tankers, Inc.*, 47 F.3d 292, 293 (8th Cir. 1995) ("It has long been held that life expectancy tables are admissible in damage actions for the consideration of the probabilities of damage over a period of years.") (internal quotation marks omitted); *see also Ehrlich v. Cent. Transp., LLC*, 2014 U.S. Dist. LEXIS 49345, at *9 (N.D. W. Va. Apr. 10, 2014); *Short v. State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 137911, at *5 (M.D. Fla. Sept. 25, 2013); *McAsey v. United States Dep't of Navy*, 201 F. Supp. 2d 1081, 1098 (N.D. Cal. 2002).  Here, however, plaintiff provides no evidentiary foundation to contextualize this table.  In fact, the relevance of a 2009 statistic to the present situation escapes the Court.  There is no evidentiary basis (other than his age in that year) on which the Court could find that the NCHS' projection is applicable to plaintiff now.  The Court accordingly declines to judicially notice the "facts" in this table.

## D. Discount Rate & *Jones & Laughlin Steel Corp. v. Pfeifer*

Plaintiff implicitly requests judicial notice of a net discount rate range of one to three percent.   Plaintiff also seeks judicial notice of select Treasury bond rates.

Any award of damages to compensate for losses of future income or for anticipated future expenditures must be reduced to present value.  Without the reduction to present value, a plaintiff receives a windfall because the award fails to account for the potential interest earning capacity of money over a period of time.  *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523,

*Hargus v. FEROCIOUS AND IMPETUOUS, LLC d/b/a ONE LOVE CHARTERS, et al.*
Civil No. 2013-111
Page 6

533, 536-37 (1983) ("[I]n all cases where it is reasonable to suppose that interest may safely be earned upon the amount that is awarded, the ascertained future benefits ought to be discounted in the making up of the award") (quoting *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 490 (1916)).

"[T]he present value calculation is to be made by the 'trier of fact,'"[5] and the trier of fact's finding of the "appropriate discount rate" is central to this calculation.[6]   "The discount rate should be based on the rate of interest that would be earned on 'the best and safest investments.'"[7] *Pfeifer*, 462 U.S. at 538.   In other words, the trier of fact must determine what net discount rate to apply such that a plaintiff entitled to a damages award is awarded a lump sum that, if safely invested, will provide him with an amount equivalent to his future damages.

In *Pfeifer* – the leading case on discounting future earnings of an individual – the Court discussed three basic methods available for adjusting damage awards to account for inflation and other sources of wage increases as well as the rate of interest:[8]

> (1) "Market interest rate" approach – This approach "utilizes forecasts of the average annual growth in earnings and interest [] rates [on a safe investment] in nominal or market terms."[9]   This calculation requires an estimate of the

---

[5]      *Monessen S. R. Co. v. Morgan*, 486 U.S. 330, 341 (1988).

[6]      *Pfeifer*, 462 U.S. at 533 (explaining the two elements required to calculate a damage award equal to the present value of lost earnings are: "(1) the amount that the [individual] would have earned during each year that he could have been expected to work after the injury; and (2) the appropriate  discount rate").

[7]      The Supreme Court explained its rationale as follows:

> Once it is assumed that the injured worker would definitely have worked for a specific term of years, he is entitled to a risk-free stream of future income to replace his lost wages; therefore, the discount rate should not reflect the market's premium for investors who are willing to accept some risk of default.

*Pfeifer*, 462 U.S. at 537.

[8]      *Pfeifer*, 462 U.S. at 547 ("defin[ing] the general boundaries within which a particular [damages] award will be considered legally acceptable") (alterations added).

[9]      Gary A. Anderson & David L. Roberts, Economic Theory and the Present Value of Future Lost Earnings:

future path of inflation, and, as Justice Stevens observed, risks turning a simple personal injury case "into a graduate seminar on economic forecasting."[10]   Accordingly, the Supreme Court stated that "both plaintiffs and trial courts should be discouraged from pursuing [this] approach."[11]

(2) "Below-market rate" or "real interest rate" approach – Under this approach, the expected rate of inflation is subtracted from the market interest rate on a safe investment to obtain the real interest rate as the discount rate.   The Supreme Court held that if this method is applied, a trial court should not be reversed if it adopts a discount rate between one and three per cent and "*explains its choice.*"[12]

(3) "Total offset" approach – Under this method, a zero discount rate is applied. This option is "considered unacceptable as a uniform method to calculate damages, although it could be stipulated to by the parties, or applied by the trial court in an appropriate case."[13]

As the Supreme Court has acknowledged, "the best method for calculating the approximate present value of an award for loss of future earnings could become the subject of reasonable debate in almost any case." *Monessen S. R. Co. v. Morgan*, 486 U.S. 330, 351 (1988).

Turning to plaintiff's specific requests, the Court considers first the request to take judicial notice of a below-market discount rate ranging between one and three per cent.[14]   Even if

---

An Integration, Unification, and Simplification of Court Adopted Methodologies, 39 U. MIAMI L. REV. 723, 732-33 (1985).

[10]   *Pfeifer*, 462 U.S. at 548 (alteration added).

[11]   *Id*.

[12]   *Pfeifer*, 462 U.S. at 548 (emphasis added).

[13]   *In re Federal-Mogul Global Inc.*, 330 B.R. 133, 163 (D. Del. 2005).

[14]   Plaintiff's understanding of the meaning of *Pfeifer* is unclear.   Rather than asking for application of the below-market rate  method, plaintiff requested judicial notice of the following "*doctrine established*" in *Pfeifer*:

> [W]e do not believe a trial court adopting such an approach in a suit under § 5(b) [of the Longshoremen's and Harbor Workers' Compensation Act] should be reversed if it adopts a rate between 1 and 3% and explains its choice.

Pl.'s Mem. at 12 [DE 229] (emphasis added) (quoting *Pfeifer*, 462 U.S. at 548-49) (alterations added); *see Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.,* 1997 U.S. Dist. LEXIS 7684, at *2-3 (S.D.N.Y. June 3, 1997) ("A court may [] 'properly notice a doctrine or rule of law from such prior case and apply that principle under the theory

the below-market rate method is the "best method" in this case, under *Pfeifer*, the Court cannot

simply discount an earnings award at some arbitrary rate between one and three percent.  Rather,

the Court is obligated to "explain[] its choice."  *Pfeifer*, 462 U.S. at 548-49.  Plaintiff has not

provided a sufficient basis to support an appropriate discount rate choice.

Plaintiff's request to utilize the interest rate on a 20 year treasury bond as the market

interest rate lacks foundation.  United States Treasury securities, which come in different

maturities up to 30 years, may well satisfy the "best and safest investments" requirement.  *See*

*United States v. Certain Land Situated in the City of Detroit*, 286 F. Supp. 2d 865, 871 (E.D.

Mich. 2003) ("[A]n investment in U.S. Treasury securities is safe because an investor will not

lose the principal underlying the investment.").  The rate of interest available even on the safest

investments varies, however, depending on the time at which the investment matures.  A review

of current market Treasury security rates, for example, indicates the rate of return could vary

anywhere from 0.02% to 2.63%.[15]  While this range seems insignificant, the effects of a small

change in the discount rate are amplified over time.[16]  *See, e.g., Dennison v. MONY Life Ret.*

*Income Sec. Plan for Emp.*, 710 F.3d 741, 743 (7th Cir. 2013) ("At a 10 percent rate the present

---

of stare decisis.'") (quoting *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)).

This particular quote, as evident *supra*, is not a "doctrine," however, but rather constitutes part of the Supreme Court's discussion regarding the "below-market rate" approach to discounting future damage awards.

[15]      *See* Federal Reserve Interest Rate Release, dated April 6, 2015, available at http://www.federalreserve.gov/releases/h15/20150406/ (last visited on April 14, 2015).

[16]      *See, e.g., Rhodes v. United States*, 967 F. Supp. 2d 246, 285 (D.D.C. 2013) (finding the 3.5% rate relied on by plaintiff's expert and based on the yield rates for government bonds as an appropriate discount rate); *Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 993 (D. Kan. 2004) (given plaintiff "sought wages projected 8 years into the future and benefits extending some 20 years . . . a reasonable person investing in relatively safe investments would almost certainly be able to obtain a net return closer to the 5% annual rate [advocated by defendant] than the 1% assumed by plaintiff") (alterations added); *Liriano v. Hobart Corp.*, 960 F. Supp. 43, 45 n.5 (S.D.N.Y. 1997) (discussing methods for determining the applicable discount rate, including relying on "historical data to determine the[] average yields" and the average rate for treasury securities currently on the market)

value of $100,000 in 20 years is only $14,864.36, while at 3 percent it would be $55,367.58.").[17]

As the Supreme Court explained, in determining the market rate of interest to be used, it is necessary to consider "how one expects the plaintiff to invest the award." *Pfeifer*, 462 U.S. at 542 n.26.  For example, the Court noted that a plaintiff "might invest the award 'exclusively in safe short-term notes, reinvesting them at the new market rate whenever they mature,' or in 'a mixture of safe short-term, medium-term, and long-term bonds, with one scheduled to mature each year of his expected worklife.'" *Culver v. Slater Boat Co.*, 722 F.2d 114, 118 (5th Cir. 1983) (quoting *Pfeifer*, 462 U.S. at 539 n.23).  The Court stated it "perceive[d] no intrinsic reason to prefer one assumption over the other." *Pfeifer*, 462 U.S. at 539 n.23.

In sum, plaintiff has failed to meet his burden of laying a foundation to support judicial notice of a discount rate between one and three percent or the use of the 20-year bond rate as the appropriate market interest rate.  *See Wilburn v. Maritrans GP*, 139 F.3d 350, 364 (3d Cir. 1998) ("In most of the reduction to present value cases which have been decided by this court[,] the principal focus has been on whether the plaintiff produced sufficient evidence to guide the [trier of fact] in determining an appropriate discount factor . . . .") (alterations added).  He has therefore failed to supply the Court with the "necessary information" to make judicial notice of these various figures appropriate.

## E.  Full Retirement Age

Plaintiff requests judicial notice that the "U.S. Social Security Administration full retirement age is 67 for an individual born on August 1, 1973."  In support of this request, plaintiff attaches a document from the "Official Social Security Website" that relates to when

---

[17]     *See also JTH Tax v. H&R Block E. Tax Servs.*, 245 F. Supp. 2d 749, 753 (E.D. Va. 2002) (recognizing "the time period over which the present value is calculated impacts the discount rate, as long term interest rates yield higher returns to the investor than short term rates").

various levels of benefits are payable.  The document states "Your full retirement age [i]s 67," but later states "Note: If you qualify for benefits as a Survivor, your full retirement age may be different."  [DE 210-1 at 4].  While courts may take judicial notice of reference sources published by the Social Security Administration ("SSA"), *see, e.g., Martinez v. Astrue*, 256 F. App'x 75, 78 n.2 (9th Cir. 2007) (taking judicial notice of an SSA investigation report); *Ehrlich v. Cent. Transp., LLC*, 2014 U.S. Dist. LEXIS 49345, at *9 (N.D. W. Va. Apr. 10, 2014) (taking judicial notice of the SSA's standard mortality table), simply stringing together quotations from cases with superficial – if any – analysis as to why those cases support the request made here is not enough.  Thus, the Court declines to judicially notice that 67 represents the age that individuals born in 1960 or later are eligible for full retirement benefits.

## F.  Court Records from *U.S. v. Kyle Coleman*

Plaintiff requests the Court take judicial notice the indictment (November 1, 2012) entered in *U.S. v. Coleman, et al.*, Case No. 3:12-cr-32 (D.V.I.) and the information (June 10, 2013), plea agreement (June 10, 2013) and judgment (December 30, 2013) entered in *U.S. v. Coleman*, Case No. 3:13-cr-30 (D.V.I.).

The fact that a court document exists falls within the scope of Rule 201(b).[18]  *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating a court may take judicial notice of the existence of another court's opinion).[19]

---

[18]     *See e.g., Williams v. Danberg*, 2011 U.S. Dist. LEXIS 538, at *1-2 (D. Del. Jan. 3, 2011) (judicial notice of three separate bills of indictment in another case); *Carroll v. Prothonotary*, 2008 U.S. Dist. LEXIS 124792, at *3 (W.D. Pa. Dec. 10, 2008) ("The court takes judicial notice of court records and dockets of the Federal District Courts."), adopted, 2008 U.S. Dist. LEXIS 105422 (W.D. Pa. Dec. 31, 2008).

[19]     *See Mahmud v. JTH Inv. Group, LLC*, 2008 Bankr. LEXIS 4632, at *20 (Bankr. E.D. Pa. Dec. 4, 2008) ("The taking of judicial notice is often merely a way of simplifying the process of authenticating documents which would generally require certification under FRE 901 and 902, and overcoming FRE 1002 best evidence problems (i.e. the concept that because they are in the Court's own files they are accepted as genuine).") (quoting Russell, Bankruptcy Evidence Manual § 201:5 (2008 ed.)).

*Hargus v. FEROCIOUS AND IMPETUOUS, LLC d/b/a ONE LOVE CHARTERS, et al.*
Civil No. 2013-111
Page 11

Judicial notice of the contents of court records, however, is improper. *Id.* (explaining a court may not take judicial notice of another court's opinion "for the truth of the facts recited therein"); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (stating "courts routinely take judicial notice of documents filed in other courts, [] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").[20]  This is so because "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."[21] *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70.

Accordingly, the Court may take judicial notice of the court records requested by plaintiff simply to establish the fact of the prior litigation against Coleman.[22]  The Court chooses, however, not to do so as these records – all created and filed subsequent to the incident at issue here – are irrelevant to the instant dispute.[23]

---

[20]     *Cf. Mahmud*, 2008 Bankr. LEXIS 4632, at *20-21 ("[A]uthenticating a document does not automatically insure its introduction into evidence in the face of other objections, such as hearsay.").

[21]     *See, e.g., Levinson v. Westport Nat'l Bank*, 2013 U.S. Dist. LEXIS 71208, at *9-10 (D. Conn. May 20, 2013) ("[T]he fact that a criminal information was filed would be a public record, whereas the facts alleged in that criminal information would not be a public record and therefore could not be used to prove the truth of the matter asserted therein."); *Muse Apts., LLC v. Travelers Cas. & Sur. Co. of Am.*, 2013 U.S. Dist. LEXIS 164015, at *3 (W.D. Wash. Nov. 18, 2013) (taking "judicial notice of the existence, docket, and status/resolution of the five [state court] actions" but not "[a]llegations and argument contained in the papers or asserted in open court [because they] have not been judicially established").

[22]     *See, e.g., United States v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (on review of denial of habeas corpus, court judicially noticed briefs and petitions filed in state courts to determine whether petitioner had exhausted his state remedies); *see generally Nantucket Investors II v. California Fed. Bank*, 61 F.3d 197, 205 (3d Cir. 1995) (explaining "[d]ocuments in [a]case record will be relevant to many issues, including waiver, estoppel, preservation of an issue for appeal, the fact and length of litigation delay, limitations issues, prejudice to an opposing party, and the like" and "[t]he use of documents . . . for such purposes" is appropriate "because the documents are not being used to determine disputed facts relating to the merits of the case and their use thus does not impose on a party's ability to meet the evidence against it").

[23]     Some courts appear to conflate judicial notice and admissibility.  For example, in *Trice v. City of Harrington Police Dep't*, 2012 U.S. Dist. LEXIS 64348, at *2-3 (D. Del. May 7, 2012), the court took "judicial notice that [defendant] was charged by indictment with rape in the first degree, kidnapping in the first degree, strangulation, conspiracy, and multiple related offenses" in one case and "entered a Robinson plea to rape in the third degree, strangulation and tampering with a witness" in a second.  Similarly, in *United States v. Blake*, 2009

*Hargus v.* FEROCIOUS AND IMPETUOUS, LLC d/b/a ONE LOVE CHARTERS, *et al.*
Civil No. 2013-111
Page 12

## G.  United States Coast Guard Circular

Plaintiff requests the Court take judicial notice of the Coast Guard's Guidance of Passenger Safety Act of 1993.  Under some circumstances, Coast Guard documents and records may be judicially noticed.   *See, e.g., Massachusetts v. Westcott*, 431 U.S. 322, 323 n.2 (1977) (judicial notice of records of the Merchant Vessel Documentation Division of the Coast Guard); *Sadowski v. The Gremlin*, 147 F. Supp. 869, 874 (D. Md. 1957) (judicial notice of the Pilot Rules for Inland Waters promulgated by the Coast Guard).  But plaintiff lays no foundation for this 38-page document, or any of the information contained in it.  In fact, plaintiff does not even attempt to explain its relevance to this case, or what "facts" – other than that this circular may have been issued at some point – he wants the Court to notice.  In these circumstances, the Court simply has no idea what "adjudicative facts" are at issue and the Court declines to notice in wholesale fashion the contents of this lengthy document.

Finally, the Court must address the timing of plaintiff's judicial notice requests and the impact on defendants.  *See Nantucket Investors II*, 61 F.3d at 205.  Judicial notice "forecloses [defendants'] opportunity to use rebuttal evidence, cross-examination, and argument to attack such evidence."  *Bruce Lee Enters., LLC*, 2013 U.S. Dist. LEXIS 31155, at *29.  Not only does plaintiff urge the Court to embrace wholesale documents and facts without any context, plaintiff placed defendants at a severe disadvantage by waiting until the eve of trial to seek notice of these

---

U.S. Dist. LEXIS 61265, at *3 n.1 (D.V.I. July 17, 2009), the court took judicial notice of a plea agreement in another case and proceeded to discuss a particular stipulation therein.

While these cases appear to judicially notice facts found within court records, this appearance may merely be a matter of careless writing.  Both an indictment and a plea agreement are admissible under Rule 803 of the Federal Rules of Evidence and as a result, courts may consider the contents therein.  *See, e.g., Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 412 (6th Cir. 2006) ("Several courts have held that an indictment from a previous conviction is properly included within the scope of Rule 803(22) and is thus admissible despite being hearsay.");  *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir.1995) (plea agreement admissible as exception to hearsay rule under [Rule] 803(22)); *In re Homestore.com, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 10677, at *30 (C.D. Cal. Jan. 25, 2011) (same)**.**

items, effectively denying defendants any reasonable opportunity to seek or proffer rebuttal evidence. Although the Rule provides for taking judicial notice "at any stage of the proceeding," FED. R. EVID. 201(d), the Court must first find that "it is not unfair to a party to do so." *Nantucket Investors II*, 61 F.3d at 205. In the present circumstances, the Court cannot find it would be fair, particularly given the Court's many admonitions regarding pretrial disclosure of evidence expected to be offered at trial.

## III.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1)   Plaintiff's requests for judicial notice of the following are **DENIED**:

    a.   May 2013 OES Estimates: Occupational Employment Statistics Survey for the U.S. Virgin Islands – U.S. Department of Labor, Bureau of Labor Statistics [DE 206];

    b.   United States Life Tables, 2009 – U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, National Center of Health Statistics, National Vital Statistics System [DE 208];

    c.   20-year constant maturity rate on a U.S. Treasury Bond [DE 209];

    d.   U.S. Social Security Administration full retirement age [DE 210];

    e.   A quote from *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983) [DE 211];

    f.   Court records from *U.S. v. Coleman, et al*, Case No. 3:12-cr-CVG-RM-32 (D.V.I.) and *U.S. v. Coleman*, Case No. 3:13-cr-30 (D.V.I.) [DE 215];

    g.   Navigation and Vessel Inspection Circular No. 7-94: Guidance on the Passenger Vessel Safety Act of 1993 – U.S. Department of Transportation, United States Coast Guard [DE 217].

(2)   Plaintiff's request for judicial notice of the Present Value Formula [DE 207] is **GRANTED**.

**Dated:** April 14, 2015                                   S\_____

                                                 **RUTH MILLER**
                                                United States Magistrate Judge